1
2
3
4
5
6                          **UNITED STATES DISTRICT COURT**

7                                **DISTRICT OF NEVADA**

8

9    MARCEL D. THOMPSON,                    )

10                  Petitioner,             )          3:05-cv-0468-HDM-RAM
                                            )
11   vs.                                    )
                                            )          **ORDER**
12   FRANKIE SUE DEL PAPA, *et al.*,        )
                                            )
13                  Respondents.            )
                                            )
14   _____)

15
16           This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by

     Marcel Thompson, a Nevada prisoner.  The action comes before the court with respect to its merits.
17
     The court will deny the petition.
18
     **I.  Facts and Procedural Background**
19
             The state charged the petitioner by indictment in the Second Judicial District for
20
     Washoe County with five counts of sexual assault on a child under the age of fourteen.  Exhibit 1.[1]
21
     After a jury trial, petitioner was convicted of counts I, II, III and V as charged.  Exhibits 22 and 25.
22
     The trial court sentenced petitioner to four consecutive terms of life in prison with the possibility of
23
     parole.  Exhibits 27 and 28.  A judgment of conviction was entered on July 19, 1994.  Exhibit 28.
24

25   _____

26          [1]  The exhibits cited in this order in the form "Exhibit ___," are those filed by petitioner in
     support of his amended petition for writ of habeas corpus and are located in the record at docket ## 2,
     3, 4, and 5.

1        Petitioner appealed, arguing one ground for relief, that the trial court erred in relying

2   on erroneous evidence at sentencing.  Exhibits 29 and 32.  The Nevada Supreme Court dismissed the

3   appeal, finding that petitioner had failed to show that the trial court relied on highly suspect evidence

4   in sentencing him.  Exhibit 35.  Remittitur issued on January 12, 1996.  Exhibit 36.  Petitioner then

5   filed a state habeas corpus petition raising numerous claims of prosecutorial misconduct, ineffective

6   assistance of trial counsel and appellate counsel and trial court error.  Exhibit 37.  After holding an

7   evidentiary hearing on the issues, the trial court denied the petition.  Exhibits 48, 49 and 50.  On

8   appeal the Nevada Supreme Court affirmed the district court's denial of the petition.  Exhibit 56.

9   Remittitur issued on August 4, 2000.  Exhibit 57.

10       Petitioner then filed a second petition for writ of habeas corpus in the state court,

11   alleging the indictment was defective and his sentence is illegal.  Exhibit 58.  Respondents moved to

12   dismiss the petition, arguing the petition was untimely and successive and because the claims were

13   without merit.  Exhibit 60.  Petitioner stipulated to the dismissal.  The district court agreed and

14   dismissed the petition.  Exhibit 62.  Petitioner did not appeal to the Nevada Supreme Court.

15       Petitioner mailed a federal habeas corpus petition to this Court on June 25, 2001.[2]

16   Respondents moved to dismiss the petition stating that some of the claims were unexhausted.  This

17   Court granted the motion to dismiss.  Petitioner asked the court to dismiss the petition without

18   prejudice so that he could return to state court to exhaust his claims.  This Court dismissed the

19   petition without prejudice on October 10, 2002, and administratively closed the case.

20       Petitioner filed another state habeas corpus petition, again arguing that the indictment

21   was defective.  Exhibit 73.   The state district court dismissed the petition as untimely and

22   successive, and found that petitioner had not demonstrated a basis to excuse the procedural bars.

23   Exhibit 75.  On appeal the Nevada Supreme Court affirmed the lower court's dismissal of the

24   petition.  Exhibits 78 and 81.  The court agreed that petitioner had not shown good cause to excuse

25   the late filing of the state petition.  *Id.*  Moreover, the court noted the claims raised in the third

26

_____

[2] Case 3:01-cv-0402-HDM-RAM.

habeas petition could have been raised in the first petition. *Id.* Remittitur issued on May 18, 2005. Exhibit 80.

On October 18, 2005 this Court granted petitioner's motion to reopen the case. Counsel was appointed to represent petitioner (docket #13) and an amended petition for writ of habeas corpus was filed on July 24, 2006 (docket #22). Respondents have filed an answer and petitioner has filed a reply to that answer (docket #30 and 36).

**II. Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002).   A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

3

1    A state court decision is an unreasonable application of clearly established Supreme

2  Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme

3  Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'"

4  *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The unreasonable application clause

5  "requires the state court decision to be more than incorrect or erroneous"; the state court's

6  application of clearly established law must be objectively unreasonable.  *Id*. (*quoting Williams*, 529

7  U.S. at 409).  *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

8    In determining whether a state court decision is contrary to, or an unreasonable

9  application of, federal law, this Court looks to a state court's last reasoned decision.  *See Ylst v.*

10  *Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir.

11  2008) (en banc).

12    Moreover, "a determination of a factual issue made by a State court shall be presumed

13  to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness

14  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

15  **III. Discussion**

16    **A.  Ground One**

17    In his first ground for relief petitioner alleges that he was denied his Fifth and Sixth

18  Amendment rights to counsel as trial counsel (1) failed to insist on his presence when the court

19  interviewed the jurors and discharged juror Munoz; (2) failed to consult with petitioner about the

20  juror changes; and (3) failed to object and move for a mistrial in light of the errors.

21    In order to prove ineffective assistance of counsel, petitioner must show (1) that

22  counsel acted deficiently, in that his attorney made errors so serious that his actions were outside the

23  scope of professionally competent assistance and (2) the deficient performance prejudiced the

24  outcome of the proceeding.  *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).

25    Ineffective assistance of counsel under *Strickland* requires a showing of deficient

26  performance of counsel resulting in prejudice, "with performance being measured against an

4

1   'objective standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v.*

2   *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

3   ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

4   to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

5   5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

6   reasonable professional assistance.  *Id.*

7         While the jury was deliberating, juror Bates wrote a note to the trial court stating that

8   she and the other members of the juror believed that juror Munoz did not sufficiently understand

9   English and thus the jury could not properly deliberate.  Exhibit 22, T 304-05.  The trial court

10   questioned all of the jurors, and each indicated that juror Munoz appeared to not completely

11   understand the language and the charges.  *Id.* at 305-09.  One of the jurors told the trial judge that

12   juror Munoz also stated that she did not belong on the jury because she was not a United States

13   citizen.  *Id.* at 309.  The court made a finding that it was going to dismiss juror Munoz because of

14   her inability to speak English and because she was not a United States Citizen.  *Id.*  at 312.  The

15   court told the jury that they could not deliberate while they were waiting for the alternate and that

16   upon her arrival they must start deliberations from the beginning.  *Id.*

17         The court then called juror Munoz and asked whether she was having difficulty with

18   deliberations.  Juror Munoz told the court that she did not understand English very well.  *Id.* at 313.

19   The court asked the juror whether she was a citizen or just a legal resident of the United States.  *Id.*

20   at 314.  The juror indicated that she was a permanent resident but is not a citizen of the United

21   States.  *Id.*  The court dismissed juror Munoz and called the alternate juror back to deliberate.  *Id.*

22   The petitioner was not present during these proceedings.  *Id.* at 305.  Defense counsel told the court

23   that he was waiving petitioner's right to be present.  *Id.*

24         The state district court denied petitioner's claims that trial counsel was ineffective for

25   failing to object to the disqualification of the juror and for failing to ensure petitioner's presence and

26   consult with him on the issue.  Exhibit 50 at 5.  The district court found that any objection to the

1    disqualification of the juror would have been futile as NRS 6.010 and the Nevada Constitution

2    require that jurors be United States citizens. *Id.* The court stated that while petitioner was not

3    present at the proceeding, the disqualification of the juror was akin to a ministerial function of the

4    court and nothing could have been added had petitioner been present. *Id.* The Nevada Supreme

5    Court affirmed the court's denial on appeal, stating the district court had no choice but to dismiss

6    juror Munoz. Exhibit 56 at 4. The court found there was no error in failing to instruct the alternate

7    juror because the court had told the remaining jurors that they were to restart deliberations from the

8    beginning. *Id.*

9            An accused has the right to be present at every critical stage of a trial "where his

10   absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819

11   n.15 (1975) (citations omitted); *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (stating "a

12   defendant has a due process right to be present at a proceeding 'whenever his presence has a relation,

13   reasonably substantial, to the fulness of his opportunity to defend against the charge'") (quoting

14   *Snyder v. Massachusetts*, 291 U.S. 97 (1934)).

15           Petitioner cites to *United States v. Hanno*, 21 F.3d 42 (4th Cir. 1994) and contends

16   that the disqualification of a juror was a critical stage of the proceeding. In *Hanno* the Fourth Circuit

17   concluded that a defendant had a right to be present when a jury was "dismembered," similar to the

18   defendant's right to be present at the impaneling of a jury. *Id.* at 46-47. However, in *Hanno*,

19   several jurors were removed without notice to the defendant *or* his attorney, neither were present at

20   the proceeding, and there was no record of the removal. *Id.* at 44. Such is not the case here.

21   Defense counsel was present and there is a clear record of the juror's removal. Moreover, the

22   Nevada Statutes and Constitution required that juror Munoz be removed as she was not a United

23   States citizen.

24           The Fourth Circuit holdings cited by petitioner are not "clearly established" federal

25   law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). The state district court

26   was mandated by statute to remove juror Munoz and therefore that hearing was not a critical stage in

1   the proceedings in which the petitioner's presence was required.

2          Even if the juror disqualification proceeding in this case was a "critical stage" of the

3   proceeding, a defendant may waive his presence at such a proceeding. *Johnson v. Zerbst*, 304 U.S.

4   458, 464 (1938); *United States v. Berger*, 473 F.3d 1080, 1095 (9th Cir. 2007).  However, such a

5   waiver must be voluntary, knowing, and intelligent.  *Berger*, 473 F.3d at 1095 (citing *Campbell v.*

6   *Wood*, 18 F.3d 662, 671-72 (9th Cir. 1994)).  Petitioner asserts that he did not voluntarily waive his

7   presence at the proceeding, and that counsel did not inform him of the proceeding.  If petitioner's

8   absence at the "critical stage" was involuntary, then a violation of due process occurred unless the

9   court determines that the error is harmless.  *Id.* at 1096.  "Constitutional error is harmless if a court

10  concludes 'beyond a reasonable doubt that the error complained of did not contribute to the verdict

11  obtained.'" *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).  It appears that any error on

12  the part of the court in failing to ensure petitioner's presence at the proceeding was harmless, as the

13  court was required to remove juror Munoz and replace her with the alternate juror.   The error was

14  not in removing juror Munoz but in removing her without petitioner's presence.  Petitioner's

15  presence at the proceeding would not have changed the outcome of the trial.

16         This claim must fail as there is no indication that the Nevada Supreme Court

17  unreasonably applied federal law as determined by the United States Supreme Court in denying

18  petitioner's claims.  Trial counsel was likely not ineffective for failing to insist on petitioner's

19  presence at the proceeding, for failing to consult with the petitioner about the juror changes, or for

20  failing to object to the removal of juror Munoz or move for a mistrial.

21         Petitioner also contends that the seating of the alternate juror was in error, as the trial

22  court did not reconvene all of the jury members, seat the alternate juror, and resubmit the case to the

23  jury as is required under NRS 16.080.  Section 16.080 specifically states:

24             After the impaneling of the jury and before the verdict, the court may
              discharge a juror upon a showing of his sickness, a serious illness or death
25             of a member of his immediate family, an undue hardship, an extreme
              inconvenience, any other inability to perform his duty or a public necessity.
26             Alternate jurors, in the order in which they were selected, shall replace
              jurors who become unable or disqualified to perform their duties.  **If an**

1

**alternate juror is required to replace a regular juror after the jury has retired to deliberate, the court shall recall the jury, seat the alternate and resubmit the case to the jury.** If no alternate juror has been selected, the trial may proceed with the remaining jurors, only if the parties so agree. If the parties do not so agree, the jury shall be discharged, and a new jury then or afterwards impaneled.

2

3

4

(Emphasis added).

5

In this case the trial court handled the discharge of juror Munoz and the seating of the

6

alternate juror as follows:

7

8          Ladies and gentlemen of the jury, I'm going to ask that you await the return of the alternate juror. We have called the alternate juror, but she is in the north valleys, it will take approximately 20 more minutes for her to get here.

9

10         You must not deliberate while she is gone and you must start from scratch once she is here. You must begin your deliberations anew with her present.

11

12         ...

13         Mrs. Bates, you are charged with seeing that the jury does not deliberate until the full twelve people are present and that the deliberations begin anew.

14

15

Exhibit 22 at 312-13. The Nevada Supreme Court, in affirming the denial of this claim,

stated:

16

17         Because the Nevada Constitution and NRS 6.010 require jurors to be citizens, the district court had no choice but to dismiss the noncitizen juror upon discovery of the problem. *See* NRS 6.010 (every qualified elector is a qualified juror in the county in which he resides); Nev. Const. Art. 2, § 1 (United States citizenship is required before a person may become an elector). Additionally, because the district court instructed the remaining jurors to restart deliberations with the alternate juror, an additional instruction to the alternate juror was unnecessary. *See Carroll v. State*, 111 Nev. 371, 373, 892 P.2d 586, 587 (1995) (policy for requiring deliberations to begin anew is to alleviate any potential pressure the original jury might place on the alternate). [FN 5: Because we conclude that the removal of the noncitizen juror and replacement with the alternate was proper, we also conclude that Thompson's appellate counsel's failure to address the issue on direct appeal did not fall below an objective standard of reasonableness.] Therefore, Thompson's trial counsel's action did not fall below an objective standard of reasonableness. Finally, after reviewing the transcripts surrounding the removal, we conclude that Thompson has not shown that his trial counsel's failure to examine the remaining jurors or the alternate was prejudicial.

18

19

20

21

22

23

24

25

26

Exhibit 56 at 4.

1    It does not appear that the Nevada Supreme Court's order was an objectively

2    unreasonable application of United States Supreme Court law. The issue is whether the Nevada state

3    court procedure of discharging a juror and seating an alternate juror complies with the Sixth

4    Amendment.   The "essential feature of a jury obviously lies in the interposition between the accused

5    and his accuser of the commonsense judgment of a group of laymen, and in the community

6    participation and shared responsibility that results from that group's determination of guilt or

7    innocence." *Williams v. Florida*, 399 U.S. 78, 100 (1970).  In *Miller v. Stagner*, 757 F.3d 988, 995

8    (9th Cir. 1985), the Ninth Circuit found that the state trial court's discharge and replacement of jurors

9    did not deprive the criminal defendant of the essential feature of a jury, nor did it violate his rights to

10   trial by jury and due process.  In that case, during open court the trial judge discharged two jurors, and

11   instructed the jury to set aside and disregard earlier deliberations and to begin deliberating anew.  *Id.*

12   *See also Henderson v. Lane*, 613 F>2d 175, 177 (7th Cir. 1980).

13   In the instant case, the trial judge, in open court, properly discharged juror Munoz.

14   While the trial court did not completely comply with NRS 16.080, in that the court did not recall the

15   full jury, including the alternate, and resubmit the case to the jury, the trial judge did instruct the

16   remaining eleven jurors that they were to start the deliberations anew *only* when the alternate juror

17   arrived.  Moreover, the alternate juror was instructed with the original jurors at the close of the case.

18   Exhibit 56.   It does appear that the essential feature of the jury was preserved in this case.

19   Although the Nevada Supreme Court did not cite to federal case law, the court did cite

20   to *Carroll v. State*, 892 P.2d 586 (Nev. 1995) in affirming the denial of this claim.  In *Carroll* the

21   court determined that the trial court's failure to comply with NRS 175.061 (now NRS 16.080) was

22   harmful error.  *Id.* at 587-88.  The court stated that deliberations were to begin anew so that an

23   alternate juror was not pressured to reach a conclusion, and cited to *United States v. Lamb*, 529 F.2d

24   1153 (9th Cir. 1975) (discussing the issue of how a jury can coerce an alternate, who is seated after a

25   juror discharge, to agree with a decision without deliberating).  *Id.* at 587.  The court determined that

26   the alternate may have been influenced or coerced, as the original jury had deliberated for two days

9

1   and the reconstituted jury deliberated for only a couple of hours.  *Id.* at 588.

2          The defendant does not argue, and the record does not support, a contention that the

3   original eleven jurors coerced the alternate juror to agree with their decision, in violation of the Sixth

4   Amendment.  The original twelve jurors began deliberations at 11:57 am.  Exhibit 56 at 302.  At 3:57

5   pm the problem with juror Munoz was brought to the court's attention.  *Id.* at 304.  The jury, with the

6   alternate that replaced Munoz, then met to begin deliberations anew at 4:35 pm.  Exhibit 1.  The jury

7   then recessed at approximately 7:30 p.m. for one and one half hours.  Exhibit 56.  The jury returned to

8   continue deliberations at 9:00 pm.  Exhibit 56 at 319.  At 9:40 pm the jury reached a verdict.  In this

9   case the jury had only been deliberating for approximately four hours prior to the discharge of the

10  juror.  The reconstituted jury deliberated for at least three to three and one half hours.

11         The Nevada Supreme Court did not unreasonably apply federal law in affirming the

12  denial of this claim.   The court will deny this claim.

13      **B.  Ground Two**

14         In his second claim for relief petitioner alleges that he was denied his right to effective

15  assistance of appellate counsel under the Sixth and Fourteenth Amendments when appellate counsel

16  failed to raise on appeal the issue of the trial court's juror errors in removing juror Munoz and seating

17  the alternate juror.

18         The state district court denied this claim, finding that no error occurred with the

19  disqualification of one juror and the seating of the alternate.  Exhibit 50.  Moreover, the court

20  determined that the Nevada Supreme Court would not have found the claim meritorious on appeal.

21  *Id.*  The Nevada Supreme Court affirmed the denial of this claim on appeal, stating that because it

22  found the removal of the juror proper, appellate counsel was not ineffective for failing to raise the

23  claim on appeal.  Exhibit 56.

24         "Claims of ineffective assistance of appellate counsel are reviewed according to the

25  standard announced in *Strickland*."  *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).  A

26  petitioner must show that counsel unreasonably failed to discover nonfrivolous issues and there was a

1   reasonable probability that but for counsel's failures, he would have prevailed on his appeal. *Smith v.*

2   *Robbins*, 528 U.S. 259, 285 (2000).

3          The Nevada Supreme Court's determination was not an objectively unreasonable

4   application of federal law.  As was noted in petitioner's first claim, it is likely that the disqualification

5   of juror Munoz was proper and any error in the court's or counsel's failure to secure petitioner's

6   presence was harmless.  Appellate counsel would not be considered ineffective for failing to raise

7   meritless issues on appeal. *Wildman v. Jackson*, 261 F.3d 832, 840 (9th Cir. 2001).  The court will

8   deny this claim.

9          **C.  Ground Three**

10         In his third claim petitioner contends that he was denied his Sixth and Fourteenth

11  Amendment rights to counsel when trial counsel failed to seek a hearing under NRS 51.385 to

12  challenge the improper admission of the victim's prior consistent statements.  At trial witnesses

13  Gotlib, Coulter, and Thompson related the victim's out-of-court statements regarding the offenses to

14  the jury.  Exhibits 21 and 22.

15         The state district court found this claim to be without merit, stating that first much of

16  the testimony was otherwise admissible.  Exhibit 50 at 6-7.  Moreover, the court stated that NRS

17  51.385 did not apply to witness under the age of 10. *Id.* at 7.  The Nevada Supreme Court affirmed

18  the denial of this claim, finding that trial counsel did not fall below an objective standard of

19  reasonableness.  Exhibit 56 at 1 n.1.

20         The Nevada Supreme Court's decision was not an objectively unreasonable

21  application of federal law.  Admission of hearsay statements do not violate a defendant's

22  Confrontation Clause rights if the declarant is available at trial for cross-examination. *See California*

23  *v. Green*, 399 U.S. 149, 157-64 (1970); *United States v. Valdez-Soto*, 31 F.3d 1467, 1470-71 (9th Cir.

24  1994); *see also Bockting v. Bayer*, 505 F.3d 973, 978 (9th Cir. 2007) (holding that to introduce out-

25  of-court statements at trial, it must be shown that the declarant will testify at trial or is unavailable,

26  and if unavailable, the statements must be adequately reliable or trustworthy) (citing *Ohio v. Roberts*,

11

1  448 U.S. 65-66 (1980)).[3]

2          The victim did testify at trial, and was subject to cross-examination.  Moreover,

3  although the petitioner states that the victim had a motive to lie, and the hearsay statements should not

4  have been admitted, the petitioner had an adequate opportunity to question the victim about her

5  accusations, her statements to witnesses Gotlib, Coulter, and Thompson and her motives to lie.  There

6  is no indication that the Nevada Supreme Court's determination that trial counsel was not ineffective

7  for failing to hold a hearing pursuant to NRS 51.385 was objectively unreasonable.  This claim will

8  be denied.

9          **D.  Ground Four**

10         In his fourth claim for relief petitioner alleges that his Sixth and Fourteenth

11 Amendment rights were violated when appellate counsel failed to raise on appeal the issue that the

12 trial court improperly allowed the victim's prior consistent statements into evidence.

13         The state district court denied this claim, as was noted above, finding that the hearsay

14 statements were otherwise admissible.  Exhibit 50.  The court also determined that appellate counsel

15 was not ineffective for failing to raise this claim as counsel would not have been successful in

16 attempting to show that the trial court committed error in not holding a hearing under NRS 51.385.

17 *Id.*  The Nevada Supreme Court affirmed the denial of this claim, stating that appellate counsel's

18 actions did not fall below an objective standard of reasonableness, and thus the claim was without

19 merit.  Exhibit 56 at 1 n.1.

20         The Nevada Supreme Court did not unreasonably apply federal law.  As was noted in

21 the previous claim, it does not appear that the admission of the victim's hearsay statements violated

22 the Confrontation Clause.  Therefore, appellate counsel would not be ineffective for failing to raise

23 this claim on appeal, as the issue does not have merit and the outcome of the appeal would not have

24 been different.  *Wildman v. Jackson*, 261 F.3d 832, 840 (9th Cir. 2001**)**.  The court will deny this

25

26         [3] While *Roberts* was overruled by *Crawford v. Washington*, 541 U.S. 36 (2004), *Crawford* is
not applicable in this case as the United States Supreme Court has held *Crawford* will not be applied
retroactively to cases on collateral review.  *Whorton v. Bockting*, 127 S. Ct 1173 (2007).

1   claim.

2        **E.  Ground Five**

3            In his fifth claim for relief petitioner asserts that his Sixth and Fourteenth Amendment

4   rights were violated when appellate counsel failed to argue on appeal that the trial court improperly

5   interfered with the presentation of his defense.  Petitioner attempted to present the testimony of his

6   wife that the size of his genitalia was such that it would have caused considerably more damage to the

7   victim than the victim testified to at trial.  Exhibit 21.

8            At trial Glorietta Thompson, petitioner's then wife and the victim's mother, testified as

9   to the size of petitioner's genitalia, and that she did not know if he could have had sexual intercourse

10  with her daughter as his penis was too large for a little girl.  Exhibit 21, T 159.  The court allowed the

11  witness to show the jury the size of petitioner's genitalia by using her hands.  *Id.* at T 159-60.

12  However, the trial judge would not allow the witness to testify as to the physical effects of sexual

13  penetration on the victim, i.e. that there would have been more physical injury to the victim if sexual

14  intercourse had occurred.  *Id.* at T 162-71.  The evidence at trial had shown that the victim clearly had

15  been subjected to sexual penetration.  Exhibit 21.

16           The state district court held an evidentiary hearing, and appellate counsel testified that

17  she did not raise the instant claim on appeal because she was of the opinion that the trial judge's

18  determination to exclude witness Thompson's testimony without a medical expert first testifying was

19  correct.  Exhibit 48, T 68-69.  The state district court denied petitioner's claim, stating:

20           The court finds that if the issue had been raised on appeal the Supreme
             Court would have ruled that evidentiary questions are addressed to the
21           sound discretion of the trial court. *See Dominguez v. State*, 112 Nev. Adv.
             Opn. 89, 917 P.2d 1364, 1372 (1996).  The Court would further have ruled
22           that the trial court did not abuse her discretion in refusing to allow the
             witness to voice an opinion concerning the probable effect of sexual
23           penetration to someone other than herself.  The witness was allowed to
             voice her opinion that Thompson was unusually large, and to demonstrate
24           his size using her hands.  The rest of her proposed testimony was properly
             excluded. [FN 1: This judge might have reached a different conclusion and
25           allowed the evidence.  The issue, however, is whether the Supreme Court
             would have found exclusion of the evidence to be an abuse of discretion.]
26           Accordingly, the court finds that counsel's decision not to raise the issue
             was a reasonable decision and that petitioner was not prejudiced by

                                         13

1  counsel's failure to present the claim on direct appeal.

2  Exhibit 50 at 4.  The Nevada Supreme Court affirmed the denial of this claim.  Exhibit 56 at 3.  The

3  court stated that appellate counsel did not fall below an objective standard of reasonableness in

4  failing to raise the issue on appeal, as "the district court, in its discretion, properly found the

5  suppressed testimony to be irrelevant."  *Id.* at 3 n.3.  The court noted that Thompson's wife was

6  allowed to testify to the substance of the defense.  *Id.*

7  Criminal defendants must be afforded the opportunity to present a complete defense.

8  *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

9  However, trial courts have discretion to "to exclude evidence that is 'repetitive..., only marginally

10  relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Crane*, 476

11  U.S. at 689-90 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

12  Petitioner has failed to meet his burden of establishing that the Nevada Supreme

13  Court's decision was contrary to, or an unreasonable application of federal law.   Petitioner was

14  afforded an opportunity to present a portion of his defense, and the state trial court, in its discretion,

15  determined the rest of the proposed testimony was not relevant.  The Nevada courts' findings that the

16  trial judge did not abuse her discretion in limiting the testimony of witness Thompson is presumed

17  correct.  28 U.S.C. § 2254(e)(1); *Dres v. Campoy*, 784 F.2d 996, 998 (9th Cir. 1986) (noting

18  evidentiary rulings are reviewed for an abuse of discretion).  Petitioner has not shown that the court's

19  determination that appellate counsel did not perform deficiently is unreasonable in light of the

20  evidence and federal law.

21  **F.  Ground Six**

22  In ground six petitioner alleges that his Sixth and Fourteenth Amendment rights were

23  violated when trial counsel failed to obtain and properly utilize an expert witness.  Petitioner

24  contends that trial counsel failed to hire an expert to testify about the size of his genitalia and the

25  damage that would have occurred had petitioner had sexual intercourse with the victim.

26  At the evidentiary hearing held in the state court petitioner presented witness Gordon

14

1   Lee Nitz, a doctor specializing in urology.  Exhibit 48, T 5-7.  Dr. Nitz told the state court that it was

2   his opinion that had the petitioner had sexual intercourse with a nine year old girl she would have

3   been physically harmed to a greater extent than was found and documented.  *Id.* at T 10-11.

4   Kathleen Peele, a registered nurse and director of the Washoe County Children's Sexual Abuse

5   Investigation Team, testified that children heal very rapidly and it is not uncommon to find no

6   evidence of trauma or injury unless the child is examined within 24 hours.  *Id.* at T 30-36.  Trial

7   counsel Carl F. Hylin testified that he could not find an expert to testify on his behalf in Washoe

8   County.  *Id.* at 90.  Moreover, Hylin stated that he had contacted an expert in San Diego who told

9   him that the defense petitioner wanted to present was not a viable option.  Exhibit 49, T 117-18.

10          The state district court denied petitioner's claim, finding that trial counsel had

11   investigated experts, and the scope of the investigation was reasonable.  Exhibit 50 at 3.  The court

12   further noted that consulting with one well-recognized expert is a reasonable investigation and that

13   absent some reason to believe another expert would render a different opinion counsel acted

14   reasonably.  *Id.*  The Nevada Supreme Court agreed and affirmed the denial of this claim.  Exhibit

15   56.  The court noted that counsel's efforts to locate an expert were objectively reasonable.  *Id.* at 3.

16          Petitioner's claim is belied by the record.  Trial counsel did investigate and attempt to

17   obtain an expert that would support petitioner's theory of defense, however, counsel could not find

18   an expert that agreed with the theory.  The Nevada Supreme Court's conclusion that petitioner's

19   claim was without merit is not an objectively unreasonable application of *Strickland*.  Furthermore,

20   the state court's factual determination that counsel acted reasonably in his investigation may not be

21   overturned unless this court cannot "reasonably conclude that the finding is not supported by the

22   record." *Cook v. Schriro*, 516 U.S. 802, 816 (9th Cir. 2008); *Miller-El v. Cockrell*, 537 U.S. 32

23   (2003).  The factual findings of the Nevada state courts are presumed correct.  28 U.S.C. §

24   2254(e)(1).  The court will deny this claim.

25          **G.  Ground Seven**

26          In his seventh claim petitioner contends that he was denied his Sixth and Fourteenth

15

1   Amendment rights when appellate counsel failed to argue on appeal that the trial court erred in

2   denying defense counsel's motion for a psychiatric evaluation of the victim.

3           Prior to trial, defense counsel filed a motion to allow a defense psychiatrist to

4   evaluate the victim as there was, according to the defense, a question regarding her truthfulness.

5   Exhibit 16.  The trial court held a hearing on the issue, where the victim's mother testified about

6   several instances, unrelated to the case, in which the victim had lied.  Exhibit 18.  The trial court

7   denied the motion, finding there was no compelling reason to order a psychiatric evaluation.  *Id.*  The

8   court found that Glorietta Thompson's testimony was not convincing or compelling.  *Id.*

9           The state district court rejected this claim, finding that the tactical decision not to

10  raise this claim on appeal did not prejudice the petitioner as the record did not demonstrate

11  prejudicial error.  Exhibit 50 at 9.  Furthermore, the state district court noted that the grounds

12  asserted by the petitioner would not require the court to compel the victim to submit to a psychiatric

13  evaluation.  *Id.*  The Nevada Supreme Court affirmed the denial of this claim, relying on *Marvelle v.*

14  *State*, 966 P.2d 151 (1998).  Exhibit 56 at 2.  The court found that there no reason to compel the

15  victim to submit to a psychiatric examination as there was physical evidence to corroborate the

16  victim's testimony, the state did not have psychologists testifying at trial, and the evidence regarding

17  whether the victim's mental and emotional state affected her veracity were not compelling.  *Id.*  The

18  court also noted that appellate counsel could not have anticipated the ruling in *Marvelle* as that case

19  was not decided until after the direct appeal, and thus appellate counsel did not act in an objectively

20  unreasonable manner.  *Id.* at 2 n. 2.

21          The Nevada Supreme Court's conclusion that petitioner's claim was without merit is

22  not an objectively unreasonable application of *Strickland*.  Furthermore, this court defers to the

23  Nevada Supreme Court's ruling on its own state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

24  (1991) (stating "federal habeas corpus does not lie for errors of state law").  Although petitioner

25  contends that the issue would have been meritorious on appeal, the state court's factual

26  determination that appellate counsel's tactical decision was not objectively unreasonable may not be

1   overturned unless the court cannot "reasonably conclude that the finding is not supported by the

2   record." *Cook v. Schriro*, 516 U.S. 802, 816 (9th Cir. 2008); *Miller-El v. Cockrell*, 537 U.S. 32

3   (2003).   There is no indication that the Nevada Supreme Court's finding is not supported by the

4   record.  This claim is denied.

5          **H.  Ground Eight**

6                  In his eighth ground for relief petitioner argues that the trial court denied him of his

7   due process rights when it relied on suspect evidence of prior convictions.  At sentencing the parties

8   argued as to whether a prior felony conviction could be matched to the petitioner based on the

9   fingerprint analysis.  Exhibit 27.  The trial judge found there were sufficient assurances that the

10  criminal history, i.e., the felony conviction, was committed by the petitioner.  *Id.* at T 5.  The court

11  also noted that if the petitioner was later able to show that he was not the same person who

12  committed the prior felony, then he would have an issue on review.  *Id.*

13                 On direct appeal the Nevada Supreme Court affirmed petitioner's convictions, finding

14  that the court did not rely on erroneous evidence in sentencing him.  Exhibit 35.  The court noted that

15  petitioner's identity was adequately proved because the name, date of birth, and social security

16  number of the individual described in the records matched the petitioner's name, date of birth and

17  social security number.  *Id.*  The court concluded that the petitioner had not shown that the trial court

18  had relied on highly suspect evidence in sentencing him.  *Id.*

19                 A sentence violates due process if a defendant can show that the information relied

20  upon in the probation report is false or unreliable, and that the information made the basis for the

21  petitioner's sentence.  *United States v. Columbus*, 881 F.2d 785, 787 (9th Cir. 1989); *Oxborrow v.

22  Eikenberry*, 877 F.2d 1395 (9th Cir. 1989) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948));

23  *Shumate v. Newland*, 75 F.Supp.2d 1076, 1096 (N.D. Cal. 1999).  "Information is unreliable if it

24  "lacks some minimal indicia of reliability beyond mere allegation."  *United States v. Ibarra*, 737

25  F.2d 825, 827 (9th Cir. 1984) (quotation omitted).

26                 There is no indication that the Nevada Supreme Court unreasonably applied federal

17

1   law as is determined by the United States Supreme Court.  The Nevada Supreme Court found that

2   petitioner had not shown that the prior convictions or criminal history listed in the probation report

3   and relied upon by the sentencing judge were highly suspect.  There is no indication that the

4   sentencing court relied on false or unreliable information beyond petitioner's mere allegation that the

5   court did so.  The court will deny this claim.

6        **I. Ground Nine**

7        In his ninth and final ground for relief petitioner alleges a claim of cumulative error.

8   The cumulative error doctrine recognizes that the cumulative effect of several errors may prejudice a

9   defendant to the extent that his conviction must be overturned.  *See United States v. Frederick*, 78

10  F.3d 1370, 1381 (9th Cir.1996).  The cumulative error doctrine, however, does *not* permit the Court

11  to consider the cumulative effect of *non-errors*.  *See Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir.

12  1999), *overruled on other grounds*, *Slack v. McDaniel*, 529 U.S. 473 (2000) ("where there is no

13  single constitutional error existing, nothing can accumulate to the level of a constitutional

14  violation").  As the Nevada Supreme Court found, petitioner's claims are without merit, therefore he

15  has failed to demonstrate any cumulative error.  This claim fails.

16  **V. Certificate of Appealability**

17       In order to proceed with an appeal from this court, petitioner must receive a certificate

18  of appealability.  28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing

19  of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme

20  Court has held that a petitioner "must demonstrate that reasonable jurists would find the district

21  court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S.

22  473, 484 (2000).

23       The Supreme Court further illuminated the standard for issuance of a certificate of

24  appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

25          We do not require petitioner to prove, before the issuance of a COA, that
            some jurists would grant the petition for habeas corpus.  Indeed, a claim
26          can be debatable even though every jurist of reason might agree, after the
            COA has been granted and the case has received full consideration, that

18

1      petitioner will not prevail. As we stated in *Slack*, "[w]here a district court
has rejected the constitutional claims on the merits, the showing required
2      to satisfy § 2253(c) is straightforward: The petitioner must demonstrate
that reasonable jurists would find the district court's assessment of the
3      constitutional claims debatable or wrong."

4 *Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

5      The court has considered the issues raised by petitioner, with respect to whether they

6 satisfy the standard for issuance of a certificate of appeal, and the court determines that none meet

7 that standard.  Accordingly, the court will deny petitioner a certificate of appealability.

8      **IT IS THEREFORE ORDERED** that the first amended petition for a writ of habeas

9 corpus (docket #22) is **DENIED**.

10      **IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT**

11 **ACCORDINGLY.**

12      **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

13 **APPEALABILITY**.

14      Dated this 2nd day of September, 2008.

15

16      Howard D McKibben
                _____

17      UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26